## Nitch, Appellant, v. Moon.

Argued September 28, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Alexander Ogle,* with him *Samuel Shahade,* and *Shahade, Horty & Shahade,* for appellant.

*William L. Kimmel,* with him *Walker and Kimmel,* for appellee.

OPINION BY JUSTICE ALPERN, December 29, 1961:

The jury returned a verdict for the defendant in a trespass action filed by the plaintiff to recover for personal injuries and property damage alleged to have been sustained as the result of an automobile accident. The plaintiff assigns as error the refusal of the court below to grant binding instructions and the refusal of the court to grant a new trial.

There was considerable conflict in the testimony, both as to the severity of the collision in the case at bar and as to whether the injuries claimed resulted from this accident or from three prior automobile collisions in which plaintiff had been involved.

The plaintiff, Helene Nitch, was driving her children home from school on March 14, 1957, in Conemaugh Township, Somerset County. Her car was in a line of traffic several cars behind a school bus. The school bus stopped suddenly to discharge students. Plaintiff came to a sudden stop nine to ten feet from the car in front of her. She testified that her car was suddenly struck from behind and was pushed forward to within one inch of the car immediately in front of

hers. As a result of the collision she testified that she was roughly jerked around in the driver's seat, bumped against the steering wheel, and her head was jerked. Plaintiff stated that the point of collision was the center of the back bumper of her car. She claimed serious whiplash injuries as a result of the accident.

The defendant's version of the accident was that he was following about two or three car lengths behind the plaintiff. He testified that when the plaintiff stopped suddenly, he stopped suddenly about twelve to fifteen feet behind plaintiff's vehicle, and that his dinner bucket fell on the floor of his car. Defendant testified that when he reached down to pick up his dinner bucket, his car drifted into the plaintiff's car. The defendant described the drifting of the car as no more severe than experienced when one backs out of a parking place and touches another car. The defendant testified there was no damage to either car.

Plaintiff had the duty of proving not only negligence on the part of the defendant, but also that the negligence was the proximate cause of the injuries claimed. *Freund v. Hyman,* 377 Pa. 35, 103 A. 2d 658 (1954). It is fundamental that there must be a causal connection between the negligent act and the injuries sustained. *Scalise v. F. M. Venzie Co.,* 301 Pa. 315, 152 A. 90 (1930). Seemingly the jury believed that the contact between the cars, resulting from defendant's negligence in allowing his car to drift into the rear of plaintiff's car, was too slight to be the proximate cause of the severe injuries claimed by the plaintiff.

The question of the severity of the contact was made a pivotal issue in the case. Plaintiff claimed that the center of the back bumper of her car was damaged, that the braces that hold the bumper were bent, the trunk lid smashed, and the braking system affected. There was no evidence to substantiate such damage. The entire cost of repairing the car was only $27.95.

There was testimony by the defendant that the dent in the center of plaintiff's back bumper was rusty, indicating prior damage. There was also testimony that the bumper of defendant's automobile was so designed that his car could not have caused the dent in the plaintiff's bumper. Defendant testified that the dent was in the center of the plaintiff's car but that the bumper guards on the defendant's car are sixteen or eighteen inches on either side of the center.

The plaintiff claimed a severe whiplash injury which prevented her from working. The physician who treated her testified that in his opinion the whiplash injuries were the direct result of this accident. The doctor testified that she was unable to engage in her usual profession as a practical nurse, and that her whiplash injury prevented her from performing her usual household chores.

There was no other medical testimony in the case. It was brought out, however, that the plaintiff had had three other accidents prior to the one in the case at bar. In two of these accidents the plaintiff admittedly suffered neck injuries. The prior accidents were developed in great detail and doubtless had a substantial impact on the jury.

The first one was an automobile accident on March 2, 1950. Mrs. Nitch testified that she sustained a sprained neck and that the neck muscles were pulled, sore, swollen, strained. She lost five or six weeks work as a result of this accident.

The second automobile accident was in 1954, when the car in which she was riding was struck from the rear. She again suffered neck injuries. The Atlas bone at the top of the spine was off the axis and there was a cervical sprain. She had sharp stabbing pain, was hospitalized and in traction for eight days.

The third prior accident occurred on August 25, 1956, less than seven months before the one in the case

at bar. Her husband had fallen asleep at the wheel of his car and hit an underpass with such force that he was knocked unconscious and Mrs. Nitch's head hit the top of the car. She sustained a bruised skull and lacerations of the forehead and eye, and was required to have forty-three stitches in her forehead. She admitted soreness and bruises all over her body but claimed that "my neck didn't bother me" as a result of this accident. The jury, in finding for the defendant, must have concluded that her statements were not credible.

The same doctor who testified to the whiplash injuries resulting from the accident in the case at bar, treated Mrs. Nitch for the accident of August 25, 1956. He did not treat her for the neck injuries of 1950 and 1954. He stated that she did not complain of any whiplash symptoms as a result of the third accident. He admitted that the symptoms of a whiplash syndrome might not manifest themselves until six months or a year later.

The jury, in analyzing the testimony relating to the three prior accidents, must have decided that the contact of the defendant's car with the plaintiff's was negligible and that the injuries of which plaintiff complains did not result from this accident.

There was other testimony where the question of credibility became a major issue.

The plaintiff testified that she could not continue with her duties as a practical nurse, nor even do her housework. She testified that she would get lightheaded and faint, and that she actually fainted on several dozen occasions. Mrs. Nitch had been driving a station wagon school bus during this period. She testified that there were times when she had to pull over and stop the station wagon because she felt lightheaded. Significantly, the same doctor who testified in her behalf on the whiplash injury, declared her to be physically fit to drive a station wagon school bus, despite

these fainting spells.  Plaintiff also admitted that she had made application to drive "a big bus" and that she had a license and "physical papers to drive," having had a state examination once a year.

Where there is a dispute as to facts—a conflict in the testimony—it must be resolved by the jury.  *Brown v. Shirks Motor Express,* 393 Pa. 367, 143 A. 2d 374 (1958).  In the light of this testimony and the testimony of the injuries sustained in the three prior accidents, the court below properly held that the decision of the jury in finding a verdict for the defendant was not capricious.

There was no error in the refusal of the court below to grant binding instructions or a new trial.

Judgment affirmed.