J-A11020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ANDRES CASASNOVAS | |
| | No. 1604 MDA 2016 |

Appeal from the Order Entered September 27, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001758-2015

BEFORE:  SHOGAN, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:                     **FILED OCTOBER 04, 2017**

The Commonwealth of Pennsylvania appeals from the September 27, 2016 order of the Centre County Court of Common Pleas granting Andres Casanovas's pre-trial petition for writ of habeas corpus *nunc pro tunc* and dismissing the charges of burglary and criminal trespass[1] against him.[2] After careful review, we reverse and remand.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3502(a)(1) and 3503(a)(1)(i).  Casanovas was also charged with simple assault by physical menace, 18 Pa.C.S. § 2701(a)(3), and criminal mischief, 18 Pa.C.S. § 3304(a)(1).  Those charges are still pending.

[2] In its notice of appeal, the Commonwealth certified that the order granting Casanovas's habeas petition substantially handicaps the prosecution.  Thus, the appeal is properly before us.  **See** Pa.R.A.P. 311(d); **Commonwealth v. Ivy**, 146 A.3d 241, 244 n.2 (Pa.Super. 2016).

The investigating officer summarized the facts underlying this appeal as follows:

> On 11 November 2015 [Officer M.T. McDannel] met with the victim, Carolina PARDO [("the victim")] and her roommates at 300 Waupelani Drive #2024, State College, PA. The victim and the 4 female roommates began to explain that [Casanovas] came into the apartment this morning at 0300 hrs and punched 2 holes in the wall of the victim's bedroom.
>
> [The victim] was visibly upset and shaken. [She] explained that she used to date [Casanovas] for about 2 years while here at Penn State. She explained that about 2 months ago they broke up and that [Casanovas] has not been reacting well to the break up. She described [Casanovas] calling her names and being very jealous of her and her actions. She has tried to calm the situation but he did not seem to understand.
>
> . . .
>
> This morning [the victim] sent [Casanovas] a text message wishing him well and that they were done. He did not react well to this and said he was coming to her apartment to punch holes in the walls. She told him not to do this. [Casanovas] showed up about 2 minutes later and entered the apartment through an unlocked door. He then went to [the victim's] bedroom and she was awake and watching TV. She said she sat up in bed and he punched the wall beside her head about 4 times, causing the drywall to break and make large holes.

Aff. of Probable Cause, 11/12/15, at 1.

At the preliminary hearing, the victim testified regarding what transpired in the moments immediately preceding the incident as follows:

> Q. Do you remember around what time these [text] messages were happening?
>
> A. 2:30 in the morning, 2:00 a.m.

Q. After [Casanovas] said he was going to break the walls, what did you tell him?

A. I said, you're not coming, Andres. He said, try me. I told him, it's the truth, and then he told me, if you say one more good thing, I'm going to go. I said to him, you're a rational person in this. You're not going to come to my house and break the walls. Goodnight. And then he said, you just said it. **And I said, if you want, you can hit my bed or my pillow, and a minute afterward, he went into the house, into my room.**

Q. Did you let him in?

A. No, I didn't.

N.T., 11/18/15, at 9-10 (emphasis added; full capitalization omitted).

On November 12, 2015, Casanovas was charged with the above-referenced offenses. The Honorable Thomas J. Kistler held a preliminary hearing on November 18, 2015, after which Casanovas was arraigned. On December 16, 2015, Casanovas filed a petition for writ of habeas corpus seeking dismissal of the burglary and criminal trespass charges, which Judge Kistler denied. Judge Kistler concluded:

> In deciding whether the Commonwealth presented a *prima facie* case, courts look at whether the evidence at the preliminary hearing would, if accepted as true, allow the judge to give the case to a jury. In the case at bar, the question of whether [Casanovas] was licensed to be in the victim's apartment is a question of fact, and must be determined by a jury. . . .
>
> Although there was testimony at the preliminary hearing that could lead a reasonable juror to believe [Casanovas] was licensed to enter the property, there was also testimony that could lead a reasonable juror to believe [Casanovas] was not licensed to enter the property. Reading the evidence in the light most favorable to the Commonwealth, the evidence presented at the preliminary

- 3 -

> hearing establishes a *prima facie* case for the Criminal Trespass and Burglary charges.

Trial Ct. Op., 2/24/16, at 3 (internal citations omitted).

On September 21, 2016, following discovery, Casanovas filed a second petition for writ of habeas corpus *nunc pro tunc*. In his petition, Casanovas alleged that on September 13, 2016, he received the text messages exchanged between Casanovas and the victim on the night of the incident. He attached to his petition the following text message from the victim to Casanovas: "[Victim]: If you want, come and hit my bed or pillows. I will hit them too. It would do me good." Pet. for Habeas Corpus, 9/21/16, Ex. A.[3]

The Honorable Jonathan D. Grine held a hearing on Casanovas's second habeas petition on September 27, 2016. At the hearing, Casanovas introduced the text message from the victim to Casanovas inviting him to her apartment to "punch pillows" on the night of the incident.[4] The

_____

[3] The victim and Casanovas communicated in Spanish on the evening of the incident. The exhibit appended to the habeas petition contains what appears to be a screenshot of the original text message in Spanish. The screenshot includes a date and a time, but the time is illegible. Beneath the screenshot is an English translation of the text message. At the hearing, defense counsel stated that he provided the English translation of the message. N.T., 9/27/16, at 50.

[4] The document admitted into evidence at the September 27, 2016 hearing differs from the one attached to the habeas petition in several respects. The document admitted at the hearing does not include the screenshot of the original message from the victim to Casanovas, only the English translation of the message. It also purportedly includes Casanovas's response, as follows:
*(Footnote Continued Next Page)*

- 4 -

Commonwealth introduced a supplemental incident report, which included additional information from the victim's interviews with police. The report stated:

> At the same time [the victim] sent a [text] response to [Casanovas's] threat, [the victim] heard someone coming through the front door. [The victim] responded with "they" (meaning [the victim] and [Casanovas]) could punch pillows together. The person who came through the front door and into [the victim's] room was [Casanovas].

N.T., 9/27/16, Cmwlth.'s Ex. 1. Judge Grine admitted both documents into evidence.

At the conclusion of the hearing, Judge Grine granted the habeas petition and dismissed the burglary and trespass charges. Judge Grine concluded that, based on the text message, "a finding that [Casanovas] did not have license to enter the victim's apartment on the night of the incident is clearly erroneous and would create a manifest injustice if followed." Opinion in Response to Matters Complained of on Appeal, 11/1/16, at 5 ("1925(a) Op."). The Commonwealth timely appealed from that decision.

_(Footnote Continued)_ ────────────────

> [Victim]: If you want, come and hit my pillows. I will hit them too. It will do me good.
>
> [Casanovas]: I warned you. Do whatever the f[***] you want. S[**]t!

N.T., 9/27/16, Casanovas's Ex. A. Unlike the exhibit attached to the habeas petition, this document does not indicate when the messages were sent. The Commonwealth objected to the admission of this document on lack of authentication grounds, which Judge Grine overruled. N.T., 9/27/16, at 49-50.

On appeal, the Commonwealth asserts that the trial court erred in granting Casanovas's second habeas petition because: (1) the petition was untimely filed; (2) the petition had already been considered and denied by a judge of coordinate jurisdiction; and (3) the Commonwealth established a *prima facie* case against Casanovas for burglary and criminal trespass. Cmwlth.'s Br. at 4.

The Commonwealth first argues that the trial court should have dismissed Casanovas's second habeas petition as untimely. We disagree.

Under Pennsylvania Rule of Criminal Procedure 578, "[u]nless otherwise required in the interests of justice, all pretrial requests for relief shall be included in one omnibus motion." Pa.R.Crim.P. 578. Rule 579(A) further provides:

> Except as otherwise provided in these rules, the omnibus pretrial motion for relief shall be filed and served within 30 days after arraignment, unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion, or unless the time for filing has been extended by the court for cause shown.

Pa.R.Crim.P. 579(A). The decision whether to declare a pretrial motion untimely is within the trial court's discretion. ***See Commonwealth v. Cooke***, 394 A.2d 1271, 1274 (Pa.Super. 1978).

Here, Casanovas was arraigned on December 14, 2015 and filed his first habeas petition on December 16, 2015. Casanovas did not file his second habeas petition until September 21, 2016, nine months after his arraignment.

Rule 579(A) provides an exception to the 30-day filing requirement where the evidence at issue was not previously known to the defense. ***See*** Pa.R.Crim.P. 579(A). In his petition, Casanovas averred that the Commonwealth did not produce the text message at issue until September 13, 2016; he filed his second habeas petition eight days later. Based on the averments in Casanovas's petition, the trial court did not abuse its discretion in considering the petition timely.

Next, the Commonwealth contends that the trial court abused its discretion in granting Casanovas's second habeas petition under the coordinate jurisdiction rule. In response, Casanovas argues that the coordinate jurisdiction rule was inapplicable because the "newly discovered" text message constituted a substantial change in facts that compelled a different result.

Generally, "[j]udges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995); ***see Zane v. Friends Hosp.***, 836 A.2d 25, 29 (Pa. 2003). The purpose of the coordinate jurisdiction rule is to "foster[] the finality of pre-trial applications in an effort to maintain judicial economy and efficiency." ***Commonwealth v. Turner***, 73 A.3d 1283, 1286 (Pa.Super. 2013) (quotation omitted). Departure from the rule is permitted "only in exceptional circumstances[,] such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was

clearly erroneous and would create a manifest injustice if followed." **Starr**, 664 A.2d at 1332. Furthermore, "a later motion should not be entertained or granted when a motion *of the same kind* has previously been denied, unless intervening changes in facts or the law clearly warrant a new look at the question." **Goldey v. Trustees of Univ. of Pa.**, 675 A.2d 264, 267 (Pa. 1996).

At the preliminary hearing, the victim testified that on the night of the incident, she had sent Casanovas a text message inviting him to her apartment to "punch pillows." The only "new" evidence Casanovas proffered in support of his second habeas petition was the text message itself, which stated: "[Victim]: If you want, come and hit my bed or pillows. I will hit them too. It would do me good." Pet. for Habeas Corpus, 9/21/16, Ex. A; *see* N.T., 9/27/16, Casanovas's Ex. A. After considering this evidence, Judge Grine determined:

> Judge Kistler and I don't see eye to eye on this. I was inclined to let Judge Kistler's habeas corpus stand. However, you know, with the text message, I can consider that evidence along with the [preliminary hearing] transcript. If I take them in context together, the Court's going to grant the habeas corpus and dismiss Count 1 and Count 2 of the criminal information.

N.T., 9/27/16, at 44.

We cannot conclude that the language of the text message, which was consistent with victim's preliminary hearing testimony, compelled a different result than that reached by Judge Kistler. In his opinion, Judge Kistler noted that while there was some evidence that could lead a jury to conclude that

Casanovas was licensed to enter the victim's apartment, there was also evidence that could lead a jury to conclude that he was not licensed to enter the apartment. Likewise, there was conflicting evidence before Judge Grine with respect to whether Casanovas was licensed to enter the victim's apartment. In particular, the supplemental incident report contradicted the victim's prior testimony regarding the timing of her invitation to Casanovas. The report stated that Casanovas entered the victim's apartment **while** the victim was sending the text message, suggesting that Casanovas may not have received the invitation before his entry. This factual question should be presented to a jury.

The evidence before Judge Grine was substantially the same as the evidence considered by Judge Kistler, and arguably weighed even more heavily in the Commonwealth's favor at the second hearing. Thus, we disagree with Judge Grine's determination that Judge Kistler's prior ruling was erroneous and would create a manifest injustice if followed.

Accordingly, we conclude that the trial court abused its discretion in granting Casanovas's second habeas petition under the coordinate jurisdiction rule. *See Commonwealth v. Brown*, 402 A.2d 1007, 1008 (Pa. 1979) (where evidence is substantially same as that originally ruled upon by first judge, second judge commits abuse of discretion in overruling or vacating prior order); *Musumeci v. Penn's Landing Corp.*, 640 A.2d 416, 419 (Pa.Super. 1994) (coordinate jurisdiction rule applies in all cases

except where newly-discovered evidence or newly-developed legal authority compels result different than that reached by first judge).[5]

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2017

---

[5] Even if we had found no violation of the coordinate jurisdiction rule, we would still reverse because the conflicting evidence presented at both hearings regarding whether Casanovas was licensed to enter the victim's apartment precluded the grant of habeas relief. While Casanovas is correct that a jury might find that he was so licensed, that possibility does not warrant pretrial relief. As Judge Kistler correctly determined, "Reading the evidence in the light most favorable to the Commonwealth, the evidence presented at the preliminary hearing establishes a *prima facie* case for the Criminal Trespass and Burglary charges." Trial Ct. Op., 2/24/16, at 3.